# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| CAMETRA S. RUTH , | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09-2795-STA |
| | ) | |
| SHELBY COUNTY FEDERAL CREDIT | ) | |
| UNION f/k/a SHELBY COUNTY | ) | |
| EMPLOYEES FEDERAL CREDIT | ) | |
| UNION et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment (D.E. # 58) filed on September 14, 2010.  Plaintiff Cametra Ruth has responded in opposition to Defendants' Motion, and Defendants have filed a reply brief.  For the reasons set forth below, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff has alleged a series of discrimination claims against Defendants pursuant to Title VII and Tennessee common law.  The following facts are not in dispute for purposes of this Motion unless otherwise noted.[1]  Plaintiff brings suit against the Shelby County Federal Credit

---

[1] The Court finds that Plaintiff's response does not comply with the Local Rules in so far as she has not responded to Defendants' Statements of Fact with the same serial numbering used in Defendants' Motion.  *See* Local Rule 7.2(d)(3).  Additionally, Plaintiff has not clearly marked the record exhibits attached to her response, specifically deposition transcripts (D.E. # 74-8 &

Union ("the Credit Union"), a member-owned financial institution serving Shelby County, Tennessee. (Defs.' Statement of Undisputed Fact ¶ 1.)[2]  Plaintiff has also named the Credit Union's Board of Directors ("the Board") and the Credit Union's President Lin Winkler ("Winkler") as Defendants. (*Id*.)  The Credit Union hired Plaintiff in June 1992 and promoted her to vice-president of branch operations on or about December 1, 2001. (*Id*. ¶ 3.)

In 2007-2008, the Credit Union's executive vice-president was Pat Cook ("Cook") who is African-American. (*Id*. ¶ 6.)  Cook supervised both of the Credit Union's vice-presidents: Plaintiff and Vatonia Gray ("Gray"), who is also African-American. (*Id*.)  On July 3, 2007, during a meeting with Winkler, Cook, and Gray, Plaintiff called Gray a "liar." (*Id*. ¶ 7.) Plaintiff then walked out of the meeting even though Winkler repeatedly asked Plaintiff to sit down. (*Id*.) Winkler subsequently terminated Plaintiff's employment on July 5, 2007. (*Id*. ¶ 8.)  Plaintiff appealed the termination to the Board, and the Board reinstated Plaintiff but imposed a three month-probation. (*Id*.)

Following Plaintiff's reinstatement, Winkler had issues with Plaintiff and confronted her about employee complaints concerning Plaintiff's behavior. (*Id*. ¶ 9.)  Plaintiff disputes this statement and asserts that the complaints did not come from other employees but from Winkler herself.  Plaintiff claims that Winkler raised these issues "as a personal retaliation thing for me being reinstated back at the credit union." (*Id*. ¶ 10.)  Plaintiff admitted in her deposition that

---

74-9).  The Court is left to speculate about who the deponent is and otherwise has no information about the date and occasion of the deposition.  It appears to the Court that the deposition at D.E. # 74-8 is that of Sonya Jackson and that the deposition at #74-9 is that of Bennie Cobb.

[2] Plaintiff's Complaint also named Bennie Cobb ("Cobb"), the chairman of the Board. Since the filing of Defendants' Motion for Summary Judgment, Plaintiff has filed a stipulation of dismissal as to Cobb.  *See* D.E. # 59, Sept. 16, 2010.

Winkler "would listen and she would be firm if needed.  And that's kind of like what I tried to do." (*Id*. ¶ 11.)  Plaintiff never made any complaints to the National Credit Union Administration. (*Id*. ¶ 12.)  Plaintiff's only formal complaint alleged that Cook had hired a personal friend with the intention of firing Plaintiff and other employees. (*Id*. ¶ 13.)  The September 2008 complaint mentioned both Winkler and Cook, because "every time there was an issue, it was the both of them." (*Id*. ¶ 14.)  Plaintiff contends that Defendants have misquoted her deposition testimony on this point.  Plaintiff was simply stating that any time disciplinary issues were raised, she always met with Winkler and Cook.  In fact, Plaintiff believed that Winkler, Cook, and Gray had an "alliance" and that anyone who disagreed with Winkler or Gray was subject to retaliation. (*Id*. ¶ 15.)  After Plaintiff's complaint was reported to the Board and Winkler on September 18, 2008, Plaintiff withdrew it. (*Id*. ¶ 13.)

In May 2008, Winkler hired Venus Sanders ("Sanders"), who is African-American, as the Credit Union's human resources specialist. (*Id*. ¶ 16.)[3]  On October 30, 2008, Gray and a Credit Union employee named Sonya Jackson ("Jackson"), who is African-American, approached Sanders to discuss Plaintiff. (*Id*. ¶ 17.)  Jackson reported to Sanders that Plaintiff had received confidential personal information from another Credit Union employee and then shared the information with others. (*Id*. ¶ 18.)  Plaintiff denies that she ever divulged any confidential information to any non-management employee.  Jackson also told Sanders that Plaintiff had made a series of disparaging remarks about Credit Union management.  For example, Jackson reported (1) that Plaintiff had described Cook, Plaintiff's supervisor, as "low-down;" (2) that

_____

[3] Plaintiff argues that Sanders actually told her that Carl Person had hired her and that she did not meet Winkler or Cook until after she was hired.

3

Plaintiff had claimed that Winkler obtained her position by having a sexual relationship with a Board member; (3) that Plaintiff alleged that Chairman of the Board Cobb (who is African-American) had cursed Plaintiff out; and (4) that Plaintiff told Jackson that Winkler, Cook, and another employee could not be trusted. (*Id*.)  Jackson stated that Plaintiff had been secretly tape-recording management's conversations. (*Id*.)  Finally, Jackson told Sanders that Plaintiff had shown her own performance evaluation to Jackson, criticizing it as lacking merit. (*Id*.)  In her brief, Plaintiff has denied two of these allegations: that she ever told anyone that Winkler had had a sexual relationship with a member of the Board or that Winkler or Cook could not be trusted. As for the rest of the allegations, Plaintiff has chosen not to dispute them.

Following Jackson's report, Sanders initiated an investigation into the allegations against Plaintiff. (*Id*. ¶ 19.)  Winkler was not involved in any way in the investigation or subsequent termination decision. (*Id*. ¶ 20.)  Sanders contacted outside attorney Lisa Leach to obtain assistance concerning the investigation and potential courses of action.  (*Id*. ¶ 21.)  Plaintiff contends that Winkler also met with Jackson (the employee making the allegations against Plaintiff), that Winkler contacted an outside attorney, and that Sanders then initiated the investigation.

Sanders interviewed six witnesses in the course of her investigation: Plaintiff, Jackson, Winkler, Cook, Cobb, and the employee who had shared private information with Plaintiff. (*Id*. ¶ 22.)  Sanders found Jackson to be a credible witness. (*Id*. ¶ 23.)[4]  The employee who had shared

---

[4] Plaintiff contends that Sanders coerced Jackson to file a complaint about Plaintiff and told Jackson that she should tell what she knew or risk losing her job.  However, upon review of Jackson's deposition transcript, the Court finds no support for Plaintiff's characterization of the testimony.  Jackson actually testified that she formed the belief that Plaintiff "was after me" (Jackson Depo. 26:2-5) and that she and Plaintiff were not friends (26:19) and that she felt

confidential information with Plaintiff told Sanders that she had never provided this information to anyone else at the Credit Union. (*Id*. ¶ 24.)  Cobb, Winkler, and Cook denied all of the other statements Plaintiff had allegedly made to Jackson. (*Id*. ¶ 25.)[5]  Plaintiff admitted to Sanders that an employee had shared confidential information concerning abuse with her; she also admitted that she had told another employee that she tape-recorded management's conversations.  (*Id*. ¶ 26.)[6]  The Credit Union's code of ethics requires employees to use confidential information properly. (*Id*. ¶ 4.)  The Credit Union's code of conduct requires employees to act "in accordance with the highest ethical standards. (*Id*. ¶ 5.)

Based upon her investigation, Sanders determined that Plaintiff's actions violated the code of ethics, the code of conduct, and the employee standards for the Credit Union. (*Id*. ¶ 27.)  Plaintiff's conduct had also damaged management's credibility and threatened the Credit Union's reputation. (*Id*.)  As a result, the Credit Union terminated Plaintiff's employment on November 17, 2008. (*Id*. ¶ 28.)[7]

Winkler sat in on the termination meeting as a witness only. (*Id*. ¶ 29.)  Plaintiff again appealed her termination to the Board, yet in this instance the Board upheld the termination. (*Id*. ¶ 30.)  Three of the five Board members who decided the appeal were African-American. (*Id*. ¶

---

threatened by Plaintiff (27:9-11).

[5] Plaintiff has neither admitted nor denied this statement.

[6] Plaintiff has disputed this statement; however, the Court finds her objection to be without merit.

[7] Plaintiff's contention that she was actually terminated by Sanders is without merit. Sanders was not Plaintiff's employer but an employee of the Board. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997).

31.)  Immediately following Plaintiff's termination, Cook, the Credit Union's executive vice-president, assumed Plaintiff's duties as vice-president of branch operations. (*Id*. ¶ 32.)  In January 2010, Winkler hired Niki Macklin (who is African-American) to serve as vice-president of branch operations (*Id*. ¶ 33.)

Plaintiff asserts that Defendants' actions caused her stomach, blood pressure, and sleep issues, and that she sought medical attention from a gynecologist, a gastroenterologist, and an internist. (*Id*. ¶ 34.)  Plaintiff adds that these health problems were related to stress at work and that she had asked her husband to admit her for mental health treatment.

When asked whether Plaintiff believed that Cobb discriminated against Plaintiff on the basis of race, Plaintiff responded that "he's African-American like I am so that would kind of be questionable;" when asked to clarify her answer, Plaintiff confirmed that her response was "No" and also denied any discrimination by then-Board member Bernita Poole, on the basis that Poole also is African-American. (*Id*. ¶ 35.)

Plaintiff has no evidence (other than her own opinion) to show that any statements Plaintiff allegedly made to either Winkler or Leach were relied upon in the decision to terminate Plaintiff's employment. (*Id*. ¶ 36.)  Plaintiff argues that this assertion is conclusory and adds that Winkler used Cook and Sanders as "her proxies" for retaliation.  Plaintiff testified in her deposition as to all of the facts and evidence that support Plaintiff's claims. (*Id*. ¶ 37.)

Plaintiff asserts that she attempted to file an EEOC charge following her 2007 termination, but that the EEOC did not permit her to do so. (*Id*. ¶ 38.)  After her November 2008 termination, Plaintiff "thought about" going to EEOC and was even advised by "several people in the legal field" to do so. (*Id*. ¶ 39.)  Plaintiff filed a charge in July 2010, which was dismissed.

(*Id*. ¶ 40.)

Plaintiff has included additional facts from the record in her response brief.  According to Plaintiff, Winkler testified that Plaintiff informer her about filing a charge with the EEOC after her 2007 termination.  (Pl.'s Statement of Fact ¶ 21.)  Shortly after commencing her employment with the Credit Union, Sanders was also told that Plaintiff had filed an EEOC charge in 2007. (*Id*. ¶ 22.)  According to Plaintiff, Winkler consulted Carl Person ("Person") about employee disciplinary matters for two years prior to informing the Board about Person. (*Id*. ¶ 23.)  Person asked Sanders, the HR specialist, to watch Plaintiff and report to him about Plaintiff's activities. (*Id*. ¶ 24.)  Person told Sanders that Plaintiff was bad for the Credit Union and "had to go." (*Id*. ¶ 25.)  Several members of the Board felt that Plaintiff was "being harassed by management." (*Id*. ¶ 26.)  Defendants object that this statement of fact is actually inadmissible hearsay.  Winkler and Cook gave Plaintiff a lower evaluation rating in 2008 than in 2006 and 2007.  (*Id*. ¶ 27.)  Plaintiff has included a variety of other allegations that are not relevant to the legal issues before the Court.[8]  Also Plaintiff has referred to more facts from the record throughout her brief although Plaintiff has not serially numbered those facts or presented them in a way which would permit Defendants to respond to her statements.

In their Motion for Summary Judgment, Defendants argue that Plaintiff cannot prove any of her discrimination claims.  First, Plaintiff's claims against the Board should be dismissed because the Board is not an independent legal entity capable of being sued.  Second, Defendants

_____

[8] Plaintiff's additional allegations concern the relationship between Gray and Jackson and the fact that Gray gave Jackson money.  Plaintiff has not provided the actual page cited for this assertion from Jackson's deposition.  Plaintiff further states that Winkler did not give her a Christmas bonus in 2006 or 2007.  The Court finds these statements irrelevant to the legal issues presented in Defendants' Motion.

contend that Plaintiff never filed a timely charge with the EEOC, and therefore her Title VII claims are untimely. Third, even if Plaintiff is entitled to equitable tolling, Plaintiff cannot make out her prima facie case of race discrimination, namely, that she was replaced or treated less favorably than an employee outside of the protected class. Fourth, Plaintiff cannot make out her claim for retaliation because Plaintiff never engaged in protected activity and cannot show a causal connection between her complaints and her termination. Fifth, Plaintiff's hostile work environment claims fail because Plaintiff did not suffer "harassment" and she cannot show that her treatment was motivated by race. Sixth, Plaintiff did not engage in any protected activity for purposes of the Federal Credit Union Act: Plaintiff never made complaints to the Attorney General or to the National Credit Union Administration. Finally, Defendants argue that Plaintiff cannot make out her retaliation claims under the Tennessee Public Protection Act or Tennessee common law or her tort claims for intentional and negligent infliction of emotional distress.

In response, Plaintiff argues that she can make out her Title VII claims and that Defendants' Motion should be denied. Plaintiff seeks equitable tolling of her Title VII claims because the EEOC mistakenly informed her that she could not file a charge in 2007. Plaintiff does not address Defendants' arguments about her claim for race discrimination. Plaintiff argues that she can prove a claim of retaliatory harassment (as opposed to a claim for retaliation). With respect to Plaintiff's claim for retaliation, Plaintiff asserts that her protected activity consists of her complaints to Lisa Leach, the Credit Union's outside counsel, in 2007. Plaintiff reported Winkler's discriminatory treatment of similarly situated tellers working at the Credit Union. According to Plaintiff, Winkler directed her to move the underperforming white employee to another post but would not re-assign the underperforming black employee. Plaintiff also reported

to the outside attorney that Winkler had refused to promote Plaintiff to loan officer until Plaintiff had served as a junior loan officer, even though Winkler promoted a white employee from bookkeeper directly to loan officer.  Plaintiff also reported that the Credit Union was not complying with state wage laws.  Plaintiff argues that these allegations against Winkler directly led to her termination in July 2007.  After the Board reinstated her, Plaintiff contends that she informed Winkler that she had attempted to go to the EEOC but was not permitted to file a charge.  Plaintiff goes on to argue that even after her reinstatement, Winkler gave her "performance criteria."[9]  Plaintiff cites testimony from board members Cobb and Poole effectively stating that at the time of Plaintiff's termination and reinstatement in 2007, they did not believe Winkler was treating Plaintiff fairly.  Plaintiff argues that this evidence satisfies her burden to prove her hostile work environment claim.  As for her final termination, Plaintiff contends that she engaged in protected activity in September 2008 by relaying an anonymous letter with allegations about Winkler targeting Plaintiff and four other black employees for termination.  According to Plaintiff, she simply forwarded the anonymous letter to Sanders in human resources.  Plaintiff has also briefed her claims under Tennessee law.

In their reply brief, Defendants argue that Plaintiff has conceded her claim for retaliation under the Federal Credit Union Act and her claims against the Board as a separate entity. Defendants have also responded to Plaintiff's statement of additional facts.  As for the merits of Plaintiff's other claims, Defendant contend that Plaintiff is not entitled to equitable tolling and that her affidavit submitted with her response brief contradicts her deposition testimony and

---

[9] Plaintiff's brief cites extensively to the deposition testimony of a member of the Board, Bernita Poole.  However, Plaintiff has not produced any portion of Poole's deposition for the Court's review.

should consequently be disregarded.  Defendants emphasize that Plaintiff has failed to show that

she was diligent in pursuing her rights.  As for her other Title VII claims, Defendants state that

Plaintiff cannot make out her claims for retaliation and hostile work environment.  Defendants

have revisited their arguments for dismissal of Plaintiff's state law claims.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a

judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the moving party is entitled
to a judgment as a matter of law.[10]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

favorable to the nonmoving party.[11]  When the motion is supported by documentary proof such as

depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must

present some "specific facts showing that there is a genuine issue for trial."[12]  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."[13]  These facts

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

---

[10] Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[11] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[12] *Celotex*, 477 U.S. at 324.

[13] *Matsushita*, 475 U.S. at 586.

verdict.[14]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[15]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[16]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[17]  Finally, the "judge may not make credibility determinations or weigh the evidence."[18]  Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."[19]

## ANALYSIS

Plaintiff has alleged the following causes of action against Defendants: race discrimination, retaliation, and hostile work environment under Title VII; retaliation under the Federal Credit Union Act; and common law and statutory retaliation, intentional infliction of emotional distress, and negligent infliction of emotional distress, all under Tennessee law.  The

---

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[15] *Id*. at 251-52.

[16] *Celotex*, 477 U.S. at 322.

[17] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[18] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[19] Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322.

Court will analyze each of Plaintiff's claims in turn.

## I.    Conflicts in Plaintiff's Testimony

Defendants argue that Plaintiff has offered contradictory evidence about her contacts with the EEOC.  This fact is relevant to Plaintiff's argument that the Court should equitably toll the 300-day filing period for her Title VII claims.  In her deposition, Plaintiff stated that she approached the EEOC after her first termination in 2007 and that she had no further contact with the EEOC after the spring of 2008.  In an affidavit filed in response to Defendants' Motion for Summary Judgment, Plaintiff has averred, "After I was terminated in November 2008, I called Mr. Johnson (Senior Federal Investigator at EEOC) and left a voice mail that informed him that I was terminated because of race and retaliation."[20]

A party cannot create a genuine issue of material fact for purposes of summary judgment by presenting an affidavit that contradicts deposition testimony.[21]  Accordingly, a plaintiff cannot create a factual issue by contradicting testimony given in her deposition.[22]  This rule is "grounded on the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists."[23] Statements which a plaintiff has knowledge of must be made in the plaintiff's deposition, when questioned on the subject; thus, if a specific statement was made in a conversation that the

---

[20] Ruth Aff. ¶ 45.

[21] *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999); *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

[22] *Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003).

[23] *Aerel v. PCC Airfoils*, 448 F.3d 899, 907 (6th Cir. 2006).

deponent was questioned on, the deponent "was required to bring it out at the deposition and could not contradict [her] deposition testimony in a subsequent affidavit."[24]  Conversely, an affidavit may be used to provide information that the questioner failed to inquire about; thus, it has been allowed where "[the deponent] was not expressly asked what [a named individual] said to [the deponent] during that conversation."[25]  A reviewing court must first determine whether a post-deposition affidavit submitted at the summary judgment stage directly contradicts the non-moving party's prior sworn testimony; if so, the affidavit should be stricken.[26]

The Court finds that paragraph 45 of Plaintiff's affidavit contradicts her prior deposition testimony.  The Court begins by noting that Plaintiff's affidavit is not entirely clear on the chronology of her contacts with the EEOC.  In her affidavit Plaintiff states that she first visited the EEOC in 2007 and describes the steps she took in her attempt to bring a charge against Defendants.[27]  Plaintiff goes on to affirm that she received a letter from the EEOC in January 2008 and made several attempts to call the EEOC at that time.[28]  It is at this point that Plaintiff's statements appear to skip ahead in chronology: Plaintiff states that she called an investigator at the EEOC after her termination in November 2008.[29]  Then rather confusingly, Plaintiff refers in her next averment to another letter from the EEOC dated March 16, 2008, and describes a

---

[24] *Reid*, 790 F.3d at 459.

[25] *Briggs v. Potter*, 463 F.3d 507, 513-14 (6th Cir. 2006).

[26] *Aerel*, 448 F.3d at 908.

[27] Ruth Aff. ¶¶ 39-42.

[28] *Id*. ¶¶ 43-44.

[29] *Id*. ¶ 45.

telephone conversation she had with the same EEOC investigator.  As a result, the version of events set out in Plaintiff's affidavit is somewhat difficult to determine.

Nevertheless, the Court finds that Plaintiff's deposition testimony and her affidavit filed with her response brief differ about the timing of Plaintiff's contacts with the EEOC.  In her deposition, Plaintiff stated that she received the letters and had a telephone conversation with the EEOC investigator prior to her final termination in November 2008 and then had no further contact with the EEOC.[30]  In her affidavit, however, Plaintiff avers that she called the EEOC "[a]fter I was terminated in November 2008."  Plaintiff's deposition testimony and affidavit are at odds.  It is clear from the transcript of Plaintiff's deposition that she was asked about whether she had any other contacts with the EEOC after early 2008.  Plaintiff was also asked if she had any other evidence in support of her claims.  It cannot be said that the attorneys failed to question Plaintiff about her contacts with the EEOC.  Therefore, the Court will not consider paragraph 45 of Plaintiff's affidavit because it contradicts Plaintiff's prior statements on the same subject.

## II.     Claims Pursuant to Title VII

### A.  Timeliness

Generally a plaintiff must file a timely discrimination charge with the EEOC in order to bring a Title VII lawsuit.[31]  In this case, the challenged unlawful act took place in Tennessee, a state with its own fair employment agency known as a deferral state.[32]  Therefore, Plaintiff had 300 days from the date of the unlawful employment practice in which to file a charge with the

---

[30] Ruth Depo. 308:1-6.

[31] *Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001).

[32] *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 622 (6th Cir. 1983).

EEOC.[33]

It is undisputed in this case that Plaintiff did not file a timely charge with the EEOC prior to bringing her lawsuit against Defendants. As such, Plaintiff argues that the Court should equitably toll the limitations period for her EEOC charge because the EEOC mistakenly told her in 2007 or 2008 that she was ineligible to file an EEOC charge. Federal courts apply the equitable tolling doctrine sparingly.[34] Accordingly, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control."[35] Moreover, "absent compelling equitable considerations, a court should not extend limitations by even a single day."[36] In the Sixth Circuit, courts are to consider the following factors when determining whether to invoke the equitable tolling doctrine: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.[37] These factors are not exhaustive, and the "propriety of equitable tolling must necessarily be determined on a case-by-case basis."[38]

---

[33] *See Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 197 (6th Cir. 1995).

[34] *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000).

[35] *Graham-Humphreys*, 209 F.3d at 560-61.

[36] *Id.*

[37] *Id.*

[38] *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

Plaintiff asserts that following her first termination in July 2007, she visited the EEOC to file a charge against Defendants and completed an intake questionaire.  An EEOC intake official informed her that she could not charge Defendants with retaliation because she had not made a prior underlying charge of discrimination.[39]  After her trip to the EEOC office, Plaintiff received two more letters from another investigator at the EEOC to discuss her complaint, the first letter dated January 25, 2008, and the second March 14, 2008.  According to Plaintiff, she ultimately spoke to the investigator by telephone.  The investigator told Plaintiff that she could not file a charge because she was an "appointed" employee.  Several months thereafter, Defendant terminated Plaintiff's employment a second time, effective November 17, 2008.  Plaintiff filed her lawsuit on November 16, 2009, and filed her only EEOC charge on July 7, 2010.

Viewing these facts in the light most favorable to Plaintiff, the Court holds that her Title VII claims are time barred and that she is not entitled to equitable tolling.  It is clear that Plaintiff was aware of the filing requirements to bring her claims of discrimination.  Plaintiff approached the EEOC some time prior in August 2007 in an attempt to file a charge about her July 2007 termination.  Thus, Plaintiff had actual and constructive notice of the filing requirements at the time of each of her adverse employment actions.  Most importantly, the Court finds that Plaintiff was not diligent in pursuing her rights.  It is true that Plaintiff has come forward with troubling evidence that the EEOC erroneously advised her about filing a charge.  Although the Sixth Circuit has never squarely addressed the issue, equitable tolling can be appropriate where a delay

---

[39] *See* Ruth Depo. 302:14-303:11; Ruth Aff. ¶ 39-42.

in instituting EEOC proceedings was attributable to the misleading conduct of the EEOC itself.[40]

After receiving apparent misinformation about filing an EEOC charge, Plaintiff never sought

legal counsel or pursued her rights with the aid of an attorney for many months.  Plaintiff only

contacted an attorney at some time after her November 2008 termination.  Even then, Plaintiff

failed to file an EEOC charge until July 2010, that is, almost eight months after filing suit and

500 days after her November 2008 termination.  Under the circumstances, Plaintiff cannot show

that she was diligent in pursuing her claims.[41]  As a result, the Court finds no basis to equitably

toll the filing requirements under these circumstances.  Therefore, Defendants' Motion for

Summary Judgment is **GRANTED** as to Plaintiff's Title VII claims.

### B.      *Race Discrimination*

Even if the Court applied the doctrine of equitable tolling to save Plaintiff's untimely

Title VII claims, Plaintiff could not survive summary judgment.  The Court holds that Plaintiff

has not adduced evidence to support her claim for race discrimination.  Where as here a plaintiff

offers only circumstantial evidence of unlawful discrimination, the Court analyzes the case using

the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[42]  Plaintiff bears the initial burden to establish her prima

---

[40] *See Page v. U.S. Indus., Inc.*, 556 F.2d 346, 351 (5th Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978) ("Ms. Williams was entitled to rely on this seemingly authoritative statement by the agency presumed to know the most about these matters."); *Fox v. Eaton Corp.*, 689 F.2d 91, 93 (6th Cir. 1982) (citing *Page* with approval).

[41] *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 469 (6th Cir. 2003) ("a plaintiff must demonstrate facts showing his or her diligence in pursuing the claim").

[42] *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).

facie case of race discrimination by showing that (1) she is a member of a protected group, (2) she was subject to an adverse employment decision, (3) she was qualified for the position, and (4) she was either replaced by a person outside of the protected class or was treated differently than similarly situated non-protected employees.[43]  In this case, Plaintiff has failed to show that she was replaced by a person outside of the protected class or that she was treated differently than a similarly situated non-protected employee.  Plaintiff admits that she was replaced by an African-American female like herself.  Plaintiff has cited no evidence that by terminating her, Defendant treated her differently than a similarly situated non-African-American employee. Therefore, even if Plaintiff had a timely claim for racial discrimination, Plaintiff's claim would not survive on its merits, and Defendants' Motion would be granted on this claim.

### C.    Hostile Work Environment

Plaintiff has further alleged that Defendants subjected her to a hostile work environment in violation of federal law.  Title VII prohibits discrimination that is "so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment."[44] In order to establish a prima facie case of a race-based hostile work environment, a plaintiff must demonstrate the following elements: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (5) the

---

[43] *Russell v. Univ. of Toledo,* 537 F.3d 596, 604 (6th Cir. 2008).

[44] *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999) (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

18

existence of employer liability.[45]  The conduct must be so severe or pervasive that a reasonable

person would find the workplace hostile or abusive, and that the victim must subjectively regard

the workplace as abusive.[46]  The Supreme Court has "made it clear that conduct must be extreme

to amount to a change in the terms and conditions of employment."[47]  Conduct that is "merely

offensive" is insufficient to support a hostile work environment claim.[48]

The Court must look at the totality of the circumstances in deciding whether a hostile

workplace existed.[49]  Appropriate factors to consider include the frequency of the discriminatory

conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

utterance; and whether it unreasonably interferes with an employee's work performance."[50]

"Isolated incidents. . ., unless extremely serious, will not amount to discriminatory changes in the

terms or conditions of employment."[51]  Additionally, the law draws a distinction between

harassment and harassment that is based on a plaintiff's protected status.[52]  Therefore, only

incidents that occurred because of a plaintiff's race are properly considered in the context of a

---

[45] *Newman v. Fed. Express Corp.,* 266 F.3d 401, 405 (6th Cir. 2001).

[46] *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 463 (6th Cir. 2000).

[47] *Faragher v. Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

[48] *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

[49] *Hafford,* 183 F.3d at 512.

[50] *Id.* (quoting *Harris,* 510 U.S. at 23).

[51] *Bowman,* 220 F.3d at 463.

[52] *Howard v. Bd. of Educ. of Memphis City Schs.*, 70 F. App'x 272, 282, 2003 WL 21518725, at *8 (6th Cir. July 1, 2003).

claim of hostile work environment.[53]

Applying these factors to this case, the Court holds that Plaintiff cannot make out her claim for hostile work environment. Plaintiff has failed to adduce any evidence to support the second and third elements of her claim, that is, Plaintiff cannot show that any of the alleged forms of harassment had anything to do with her race.[54] For example, Plaintiff complains that Winkler "nit-picked" her work and created performance criteria for her. Even accepting these allegations as true, none of the alleged harassment is facially racial or included any specific reference to Plaintiff's race. There is no evidence that any manager ever made a racial remark to Plaintiff or about Plaintiff. Therefore, the Court holds that none of the conduct described in the record could properly form the basis for her claim of a hostile work environment because they do not constitute racial harassment. Therefore, even if Plaintiff had filed a timely charge with the EEOC, Plaintiff's claim of hostile work environment would fail on the merits, and Defendants would be entitled to summary judgment as to this claim.

### D.    Retaliation

Likewise, even if Plaintiff's claim of Title VII retaliation was timely, the Court holds that her retaliation claim would not survive on the merits. In order to make out a prima facie case of retaliation, Plaintiff must demonstrate (1) that she engaged in protected conduct; (2) that Defendant had knowledge of her protected activity; (3) that Defendant took an adverse employment action against her; and (4) that there was a causal connection between the protected

---

[53] *Id*. (citations omitted).

[54] *Arendale v. City of Memphis*, 519 F.3d 587, 606 (6th Cir. 2008).

20

activity and the adverse employment action.[55]

Viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff could not make out a claim for retaliation.  As an initial matter, it appears that there were two discrete adverse employment actions in this case: Plaintiff's initial termination in July 2007 and her final termination in November 2008.  With respect to her initial termination, Plaintiff has shown that she reported what she believed to be violations of the law to an outside attorney investigating matters at the Credit Union.  Specifically, Plaintiff has testified that she informed Lisa Leach that Winkler had shown preferential treatment to a white employee while not making the same accommodations for a similarly situated black employee.  Assuming that Plaintiff's accusation was protected activity and that Winkler was aware of Plaintiff's accusation, the Court finds no evidence of a causal connection between Plaintiff's statement to the attorney and her termination in July 2007.  Plaintiff has suggested that she made her statement to the attorney in February or March 2007 and that the accusation was then relayed to Winkler.  Plaintiff has suggested that Winkler summoned her to a meeting on July 3, 2007, as a set-up or ambush in retaliation for Plaintiff's accusations.  Other than the temporal proximity of approximately four months, Plaintiff has adduced no evidence of any causal connection between the accusation she made against Winkler and her termination on July 7, 2007.  Without more, the Court concludes

---

[55] *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006).  Plaintiff has briefed the elements of a claim for retaliatory harassment set forth in a sex discrimination case.  *Morris* is arguably inapplicable here.  The claim announced in *Morris* was available because the plaintiff in *Morris* could not show that she had suffered a "tangible employment action."  Here Plaintiff suffered two separate "tangible employment actions."  Nevertheless, the Court will address the merits of Plaintiff's claim for retaliatory harassment below.

that Plaintiff cannot show that Winkler retaliated against her when Winkler decided to terminate

her in July 2007.  Therefore, even if Plaintiff had had a timely claim, Defendants' Motion should

be granted as to this claim.

As for her final termination in November 2008, the Court holds that Plaintiff cannot make

out her prima facie case for retaliation.  Viewing the evidence in the light most favorable to

Plaintiff, the Court will assume that Plaintiff's contact with the EEOC in August 2007 was

protected activity for purposes of this claim.[56]  The record further indicates that Plaintiff

informed Winkler in August 2007 that she had gone to the EEOC to file a charge.[57]  The parties

dispute whether Winkler made the decision to terminate Plaintiff's employment.  Defendants

assert that Winkler was aware of the situation but that the decision was made by Venus Sanders

in human resources.  Plaintiff contends that Sanders was actually Winkler's proxy.  In any event,

even assuming that Winkler herself made the decision to terminate Plaintiff in November 2008,

Plaintiff has failed to show a causal connection between her EEO activity in August 2007 and her

termination in November 2008.  Plaintiff has described an increase in the scrutiny she received

---

[56] Plaintiff has also adduced evidence that in September 2008 she provided an anonymous letter to human resources alleging that Pat Cook had a conflict of interest in hiring a personal friend, Carl Person.  Sept. 2008 Letter, D.E. # 74-3.  The letter further alleges that Person was targeting Plaintiff and others for termination.  There is only one reference to Winkler.  The Court holds as a matter of law, that producing this anonymous letter is not protected activity for purposes of Title VII.  The letter refers extensively to Cook, who is African-American, and her alleged conflict of interest in hiring Person.  There is no evidence that Cook had any role in the decision to terminate Plaintiff's employment.  Nothing in the letter mentions illegal discriminatory activity.  Therefore, the Court holds that forwarding this letter to human resources does not amount to protected activity under Title VII.

[57] Plaintiff actually cites Winkler's deposition at 187:23-188:12 for this assertion.  However, Plaintiff did not attach this portion of Winkler's deposition, and the Court is not otherwise able to locate it in the record.

from Winkler and others in management, including the development of performance criteria and lower evaluations. Increased scrutiny of an employee's work does not rise to the level of an adverse employment decision.[58] Nor does the development of performance criteria.[59] More importantly, Plaintiff has adduced no evidence that this increased scrutiny was related to Plaintiff's contact with the EEOC. The temporal gap of more than one year between Plaintiff's protected activity and her termination further weakens any causal connection. As a result, the Court holds that Plaintiff cannot make out a retaliation claim based on her November 2008 termination, and Defendants would be entitled to summary judgment on this claim.

In her response brief, Plaintiff argues for the first time that she has actually alleged a claim for retaliatory harassment, and not retaliation.[60] Although the Court is not convinced that Plaintiff stated such a claim in her Complaint, the Court holds that Plaintiff has not adduced sufficient evidence to make out a claim for retaliatory harassment.[61] More specifically, Plaintiff has shown only that Winkler and others in management began to monitor her work more closely and criticize her performance more often after her first termination and reinstatement in 2007. Plaintiff has stated that she developed serious work-related anxiety and that her anxiety had serious effects on her health. The Court finds that this evidence standing alone is not objectively

---

[58] *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 169 (6th Cir. 2004).

[59] *Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002).

[60] Pl.'s Resp. 8 ("Plaintiff's theory of the case is that each of the discriminatory acts of Defendant occurred as part of its ongoing retaliatory harassment of Plaintiff.").

[61] In order to establish this claim, Plaintiff must show the same elements required for retaliation. In lieu of proving an adverse employment action, a plaintiff may demonstrate that she was subjected to severe or pervasive retaliatory harassment by a supervisor. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000).

severe or pervasive enough to support a claim for retaliatory harassment.[62]  Therefore, even if

Plaintiff has stated such a claim, Plaintiff has not established a prima facie case for it.

## III.   Federal Credit Union Act

Defendants next seek summary judgment for Plaintiff's claim of retaliation under the

Federal Credit Union Act.  Plaintiff has not responded to Defendants' arguments in favor of

summary judgment on this claim, and Defendants contend that Plaintiff has conceded the issue.

The Court holds that regardless of whether Plaintiff has conceded this claim, Defendants are

entitled to summary judgment.  The Federal Credit Union Act contains the following

whistleblower protection:

> No insured credit union may discharge or otherwise discriminate against any employee
> with respect to compensation, terms, conditions, or privileges of employment because the
> employee (or any person acting pursuant to the request of the employee) provided
> information to the Board or the Attorney General regarding any possible violation of any
> law or regulation by the credit union or any director, officer, or employee of the credit
> union.[63]

For purposes of the Act, "the Board" means the National Credit Union Administration Board.[64]

"In providing credit union employees with protection against retaliation, Congress intended to

enhance the regulatory enforcement powers of the depository institution regulatory agencies to

protect against fraud, waste, and insider abuse."[65]  In the absence of the other authority applying

---

[62] *See Barnes v. United Parcel Serv.*, 366 F. Supp. 2d 612, 617-18 (W.D. Tenn. 2005).

[63] 12 U.S.C. § 1790b(a)(1).

[64] 12 U.S.C. § 1752(4).

[65] *McNett v. Hardin Cmty. Fed. Credit Union*, 118 F. App'x 960, 963, 2004 WL 3021805,
at *2 (6th Cir. Dec. 30, 2004) (quoting *Simas v. First Citizens' Fed. Credit Union,* 170 F.3d 37,

the Federal Credit Union Act's whistleblower protections, the courts should turn "to case law construing comparably-phrased anti-retaliation provisions in other federal employment-discrimination statutes" such as Title VII. [6]

In the case at bar, Plaintiff has adduced no evidence of reporting any violations of law to the Attorney General or the National Credit Union Administration Board.  It is true that Plaintiff did make a formal complaint to the Board of the Credit Union alleging that Pat Cook had hired a personal friend with the intention of firing Plaintiff and other employees.  The Court finds that this complaint was not protected whistleblowing for purposes of the Federal Credit Union Act because the complaint was not made to the National Board or the Attorney General. Furthermore, Plaintiff has failed to show how this complaint was causally connected to her termination.  There is no evidence that Pat Cook was involved in the decision to terminate Plaintiff's employment. Therefore, Plaintiff has not met her burden as to this claim, and Defendants' Motion is **GRANTED**.

## IV.    State Law Claims

Where the Court has original jurisdiction, the Court may exercise its supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. [67]  It is settled law that the district court may exercise supplemental jurisdiction over state law claims, even after the basis for federal jurisdiction has been eliminated, "if recommended by a careful consideration of

43 (1st Cir. 1999) (quotations and other citations omitted)).

[66] *McNett*, 118 F. App'x at 963 n. 3.

[67] 28 U.S.C. § 1367(a).

factors such as judicial economy, convenience, fairness, and comity."[68]  Generally, if a federal

claim is dismissed before trial, the state claims should be dismissed as well.[69]  Having granted

Defendants summary judgment as to Plaintiff's federal law claims, Plaintiff is left only with

claims for relief under Tennessee law.  The Court declines to exercise its supplemental

jurisdiction over Plaintiff's state law claims.

### CONCLUSION

The Court holds that Plaintiff's various claims under Title VII are barred for failure to file

a timely charge with the EEOC.  Even if the Court had applied the doctrine of equitable tolling

and reached the merits of Plaintiff's Title VII claims, the Court concludes that Plaintiff could not

make out her prima facie case as to any of the claims.  The Court further holds that Plaintiff has

failed to make out her claim for retaliation under the Federal Credit Union Act.  The Court

declines to exercise its supplemental jurisdiction over Plaintiff's remaining claims under

Tennessee law.  Therefore, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: November 29, 2010

---

[68] *See Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

[69] *Taylor v. First of Am. Bank-Wayne,* 973 F.2d 1284, 1287 (6th Cir. 1992).

26